# PIONEER TELEPHONE & TELEGRAPH CO. v. STATE *et al.*

### No. 5643.    Opinion Filed December 8, 1914.

#### (144 Pac. 1060.)

1.  **TELEGRAPH AND TELEPHONES—Corporation Commission—Jurisdiction—Orders.**  Complainants are mutual telephone companies, organized and operated in the vicinity of Cherokee, Okla. The expense of building and operating the lines is paid by contributions from the stockholders and subscribers.  In their dealings and intercourse with defendant, complainants are paid a commission for such services rendered.  **Held,** that the Corporation Commission had jurisdiction to entertain a complaint on the part of complainants against defendant, and to make such orders as may be reasonable and just pertaining to the public service.

2.  **SAME—Sufficiency of Evidence,** Complainants own what is known as a "clear wire" connecting certain towns in the vicinity of Cherokee with defendant's exchange at Cherokee.  Upon payment by complainants to defendant of a stated amount per month, all rural subscribers are permitted to talk over the line of the mutual companies through defendant's exchange at Cherokee, except the subscribers residing in the towns, referred to and classed as commercial subscribers, who are permitted to talk free over the lines of the mutual companies to any one, except a resident of another town, in which case he is connected over the clear wire owned by defendant, and a message fee of fifteen cents is charged.  Complainants prayed for an order of the Corporation Commission, requiring defendant to connect the subscribers of the mutual companies residing in said towns when desiring to talk to a resident of another town over the clear wire owned by complainants, and asked that they be permitted to talk without extra charge.  Upon a hearing, the Commission made an order, requiring defendant to connect the subscribers residing in said towns, when desiring to talk to residents of other towns within a radius of fifteen miles of Cherokee over complainants' clear wire.  Held error, for the reason there was no evidence before the Commission authorizing said order.

3.  **SAME—"Mutual Company"—"Without Hire."**  The term "mutual company," as applied to telephone companies, is not necessarily synonymous with the term "without hire."

(Syllabus by the Court.)

### *Appeal from Corporation Commission.*

A complaint was filed with the Corporation Commission by

the State and the Cherokee Rural Telephone Company and others against the Pioneer Telephone & Telegraph Company. From orders of the Commission, defendant appeals. Reversed.

*Harris, Nowlin & Bledsoe, J. R. Spielman* and *M. S. Singleton,* for appellant.

*Andrew J. Titus* and *Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State and appellees.

RIDDLE, J.   This is an appeal from Orders Nos. 678 and 678a of the Corporation Commission. Plaintiff in error will be referred to as defendant, and defendants in error, the complainants. On the 20th day of October, 1910, complainants filed their complaint against defendant with the Corporation Commission, alleging substantially:   That in October, 1905, defendant entered into a contract with complainants, whereby it was agreed that when complainants constructed their telephone line to the edge of the town of Chorekee, defendant would connect said line to its exchange at Cherokee; that the rural subscribers of complainants should have free use of defendant's exchange at Cherokee over all rural telephone lines for six months, and thereafter complainants' subscribers should be required to pay 25 cents per month per telephone, with a minimum charge of $1.50 per month for each rural line, and a maximum charge of $5; that said party line subscribers should have free use of defendant's exchange over the rural lines; that defendant should give the rural subscribers of any other rural company connected with the exchange of defendant at Cherokee the use of said lines without charge.   Complainants further allege that the farmers, or party line subscribers, are permitted to use, free of charge, the "clear wires" connected with the Cherokee exchange between the towns of Lambert, Cherokee, Driftwood, Ingersoll, Byron, and Amorita, where plaintiff in error has an exchange; that complainants' subscribers, living in the town of Lambert are permitted to talk with defendant's subscribers living in the town of Cherokee, without paying the usual fee for said ser-

vices, although complainants maintain a clear wire between said towns; that complainants' subscribers are stockholders in said rural companies connected with defendant's exchange. Complainants further allege that because some of their subscribers are residents of said towns and stockholders in said mutual companies, they should also be permitted to use the clear wires of the mutual companies for long-distance messages, but instead, defendant routes their messages over its own clear wire between said towns, and charges the usual long-distance fee therefor; whereas, the rural or party line subscribers are permitted to use said clear wires of the mutual companies free of charge between said towns. Complainants further allege that defendant is discriminating between its subscribers residing in towns and what are known as "rural subscribers," and pray that an order of the Corporation Commission may issue, compelling defendant to furnish the inhabitants of said towns free long-distance services over the rural lines of said mutual companies connecting with defendant's exchange at Cherokee. Defendant filed its answer, in the nature of a general denial, and alleging specifically that under section 5, article 9, of the Constitution, the Corporation Commission was without jurisdiction to make the order sought to be made, for the reason that complainants are mutual companies, not operated for hire, so as to bring them within the purview of said section of the Constitution; that the rural or party line subscribers are permitted to talk to any other rural or party line subscribers to any other town connected with the exchange of defendant, except where the parties are residents of the towns, in which case, defendant claims it is entitled to the usual long-distance fee for services over its clear wire; and that therefore it transmits all such messages over its clear wire between said towns. It further alleges that complainants are not rural subscribers, but are business men, and that each has a separate telephone connection with the central office at said towns, and that complainants are not entitled to the benefits of the provision of said contract, requiring that the rural subscribers of such towns, connected with the exchange at Cherokee, should have free service

Form 2

over complainants' clear wire connected at Cherokee with defendant's exchange. The issues thus being made, the Commission proceeded to hear the evidence of both parties. At the second hearing, the Commission found the issues in favor of defendant and dismissed the complaint. Upon motion of complainants, Byron Mutual Telephone Company, Citizens' Telephone Company, and the Amorita Telephone Company, to vacate said order, the Commission proceeded to reconsider the order made. Upon a reconsideration of said complaint and the introduction of additional evidence, the Commission made the order hereinafter set out.

It appears from the evidence introduced before the Commission that the Cherokee Telephone Company, Byron Mutual Telephone Company, Amorita Telephone Company, and the Citizens' Telephone Company, at Driftwood, which has an exchange connecting the towns of Carmen, Dacoma, and Cherokee, are mutual companies; that the lines were built by the farmers and business men of the towns included therein; that they own their own exchanges at the towns of Ingersoll and Driftwood, and own what is known as a "clear wire" from said towns to the city of Cherokee; that as a rule, each person, in order to be given the services of a telephone, was required to buy stock in said mutual companies; and that all persons having the use of telephones were members of the rural companies. It further appears from the evidence that the Pioneer Telephone & Telegraph Company owns the exchange at Cherokee, and also owns a long-distance line, or clear wire, connecting all the towns above mentioned; that defendant transmits said messages over the community clear wire, when requested by rural subscribers, but when a person, say in Amorita, wishes to talk to a man in Cherokee, he is required to pay the usual long-distance fee; whereas, the rural subscriber, as above stated, can talk free between said towns, and the message is routed over the lines of said mutual companies.

The questions raised on this appeal are: (1) Did the Corporation Commission have jurisdiction to make the orders com-

plained of herein? (2) Are orders Nos. 678 and 678a, complained of by defendant, supported by the evidence introduced before the Commission? We shall consider these questions in the order in which they are set out.

It is the contention of defendant that, inasmuch as the record shows that the complainants are mutual companies and some of the officers of those companies testified they were not operated for hire, the Commission had no jurisdiction over such companies, and thus was without authority to make the orders complained of. In our opinion, this contention is not sound. While the record shows complainant companies are mutual companies, and Mr. Rather, president of the Byron Mutual Telephone Company, testified that his company was not operated for hire, yet the very nature of the business in which these companies are engaged, as shown from the record, each owning and operating a number of miles of telephone lines, with a large number of subscribers, who contribute for the purpose of erecting and keeping up the expense in operating said lines, and the further fact that it is shown from the record that in their intercourse with defendant company they receive a certain per cent. from that company for services rendered, shows beyond question that these companies, while mutual companies, were organized and are operated for hire, within the purview of section 5, article 9, Constitution. To hold otherwise would mean that companies could organize throughout this state on the plan of mutual companies, and in effect control the larger part of the telephone business in the state, and yet could operate unregulated and without any restraint of any kind. In our judgment this was not contemplated by the Constitution. The term "mutual companies" is not necessarily synonymous with the term "without hire." In addition to this, the fact that the companies made complaints against defendant company, and the primary object of said complaints was to obtain orders regulating their business, would be sufficient to give the Corporation Commission jurisdiction of the whole proceeding. We are therefore of the opinion that the Com-

mission had jurisdiction over the parties and subject-matter of this controversy.

Coming to the second proposition, we find from the record that the particular portion of Orders Nos. 678 and 678a to which complaint is made is wherein the Commission created and designated a new class of subscribers, to wit, the semirural subscribers. The first order made by the Commission is Order No. 356, and was in favor of the defendant company, and a part of the Commission's finding is as follows:

"It is the opinion of the Commission that this charge [referring to the switching fee of $5 per month] is not unreasonable or too great a charge in consideration of the service rendered; and it is further the opinion of the Commission that a charge for a message from a station in one town to a station in another town, where neither station is connected with a 'rural party line,' whether such message passes over a 'clear wire' or a toll line, is not unjust, inasmuch as such messages come strictly under the head of toll or long-distance business; and, further, it is not an unjust charge, in lieu of the service rendered 'rural party lines' and the cost of such service to rural subscribers."

In making the orders complained of, the Commission, in part, made findings as follows:

"The arrangements under which the defendant and the various rural or mutual companies have done business as set forth in the contract introduced in the record show what the parties had agreed was a reasonable arrangement at least as to the time the contract was to run, which was a period of five years from May, 1906. Contracts for reciprocal service between telephone companies may not be controlling, but should certainly be considered in connection with all the other facts in the case. * * * The distinction which the defendant draws is that it is unjust to it for the business men of Lambert to talk over the clear wires of the rural telephone companies to Byron or other rural exchanges to the business men of other towns. The defendant contends that the subscribers in Cherokee should not be permitted to talk over the clear wires of the rural exchanges to subscribers of such exchanges residing in town without paying a toll charge of 15 cents. To sustain the

contention of the rural telephone companies, it would make it possible for a subscriber, either a business man or otherwise, at Cherokee, to talk by means of this rural system all over the entire county and to exchanges located in Kansas, without any charge whatever, other than their monthly rentals.

"This case is not for the determination of what are reasonable rates, but the question before the Commission for consideration is whether the defendant is discriminating in refusing to permit the merchants and other subscribers who reside in the town of Byron and other rural telephone towns to have continuous service through the various exchanges described above, when such privileges are extended to what the defendant terms the *bona fide* rural subscribers. Hence the question resolves itself into what is a rural subscriber and what class of service, if any, should be extended to such subscribers which could be withheld from other subscribers without a discrimination. This question has been before the Commission in various forms several times, and it has been the policy of the Commission to protect the rural telephone subscribers in the rates and privileges it now enjoys without extending this service to the subscribers of a commercial telephone company in a town. To require the rates for rural telephone service to be extended to the subscribers of commercial telephone systems would have the effect ultimately of destroying the reciprocal arrangements and mutual benefits that now accrue to the rural telephone subscriber. * * * Hence the Commission has been and will be very careful in its rulings not to lay down any principle, which with its most comprehensive interpretation may have the effect to finally throw a burden upon the rural telephone service or exchange. * * *

"Rural service is maintained and switched at an exchange at a nominal price, largely for the benefit of the subscribers, business men, and doctors in the town limits, and if the exchange subscribers were permitted to run their lines without the city limits and connect with rural lines, this would reduce the exchange to a rural service proposition, and would destroy the efficiency of the exchange. * * *

"It cannot be insisted that it is a discrimination to allow the farmers to run a line to a switchboard containing a number of rural subscribers and not allow people living within a certain distance of the exchange to connect with this line. The circumstances

are different. The rural line is operated with several subscribers, and performs a different class of service and serves a different purpose to a greater extent than the operation of an exchange in town. * * *

"The Commission finds that all subscribers living in towns, whether mutual owners or not, should be classed as semirural subscribers, and that a different rule may be applied to this class of subscribers than the one which is usually applied to the *bona fide* rural subscriber. These towns range in population from 125 to 250. * * *

"The question to be determined here is, Can the Commission lay down a rule putting this class of subscribers, as many as 40 of whom are in some of these towns, on the same basis in all particulars as the regular rural subscriber? We think not. The system may grow top-heavy and ultimately result in an increased burden on the rural telephone subscriber. It is our opinion that the service should be extended by the defendant to those we have herein termed semirural telephone subscribers within a radius of fifteen miles air·line from its exchange at Cherokee. * * *

The Commission then proceeds:

"It is therefore ordered that the defendant, the Pioneer Telephone & Telegraph Company shall, without additional charge, permit the semirural telephone subscribers (as defined in the opinion in this case) of all rural telephone exchanges located within fifteen miles air line distance of Cherokee to talk to all the subscribers of the defendant's exchanges in the town of Cherokee, and to the subscribers of all rural lines switched at the central office in Cherokee, and to permit all subscribers at Cherokee, rural or commercial, to talk to the subscribers of all rural exchanges subject to the above rule. This reciprocal service shall only be required of the defendant when the same can be done over the clear wires of the rural companies. The defendant is ordered to make physical connection with all clear wires connecting any rural exchanges within fifteen miles air line from Cherokee."

In determining the question as to whether or not the defendant company made an unreasonable or unlawful discrimination between what it designates the farmers or rural subscribers and those subscribers residing in the small towns mentioned, classed as

commercial subscribers, we must take into consideration the purposes which the rural system is intended to serve. It seems that it cannot be questioned that the main purpose of establishing the mutual rural system was for the benefit and convenience of the people residing in the rural districts; and, as stated by the Commission in its former order, any rule or regulation which would materially impair or put additional burdens upon the service to which these people are entitled should be avoided. Necessarily the business men in the towns require a different service from that of the rural subscribers. If a party in town has an interest in the mutual company, he is entitled to, and under the rule of defendant company receives practically, the same service of the rural subscriber. He may talk to the rural subscribers of any mutual company's lines connected with defendant's exchange, free of charge and he may be communicated with by any person in the rural districts over such line. To give him the additional free service of the clear line, running from town to town, would give him an advantage over the rural subscriber, which would be to the detriment of such rural subscriber. There can be no question but this would finally burden and materially impair the efficiency of the rural district service. There is another more serious difficulty in permitting the order of the Commission to stand. The Commission finds, as a matter of fact, that there is a different class of service required for the subscribers residing in the towns than is required for the rural subscribers; that his situation and business demand a higher class of service and necessarily more attention. Yet it proceeded to make an order, the effect of which gives the town or commercial subscribers practically the same service, and requires additional services to be rendered to the town subscribers, without any additional compensation. Suppose there are towns of the same size, situated from fifteen to twenty miles of Cherokee. Would it not be an unjust discrimination to permit a resident of a town fifteen miles air line of Cherokee to talk through the Cherokee exchange free, and yet charge the regular long-distance fee for a man who resides in a town fifteen to twenty miles from Cherokee?

Where is the line to be drawn as to population? Will this order apply only to towns of from 125 to 250 population, or will it apply to towns of from 250 up to 1,000 population? It seems that a more sound basis for an order regulating this character of the telephone business would be to place it upon the character of service required. That the mutual rural district subscribers were organized mainly for a local service and convenience and for the accommodation of the farmers residing contiguous to such lines must be admitted, and the service should be furnished at a nominal price, or at practically what it costs. The service for which the fee of fifteen cents is charged comes within the class designated as purely toll or long-distance service. We see no reason why a man living in a town of a population of few hundred, or a population of 2,000 or 3,000 inhabitants should be required to pay for talking to a party residing in a town situated fifteen miles air line from an exchange, when a man similarly situated in a town of from 250 to 300 inhabitants engaged in a similar business should be permitted to talk to another town the same distance free. They both come within long-distance service. Neither is there any apparent reason why a party residing in a town situated seventeen miles air line from an exchange should be charged a message fee for talking to a party residing in another town similarly situated, when a party residing in a town situated fifteen miles from an exchange may talk free to a party residing in another town similarly situated or *vice versa*. The expense of erecting, maintaining, and operating is practically the same, and certainly the discrimination cannot be justified on this ground; nor is the situation of the parties sufficiently different to warrant the distinction. We agree with the Commission that no rule or regulation should be promulgated which in its most comprehensive interpretation would finally burden or impair the efficiency of the farmer or rural telephone subscribers. If the farmers' mutual lines are to be burdened with this class of commercial business, the effect will be to practically destroy the purpose for which the mutual rural lines were organized. In our judgment, the conclusion of the Commission is,

in effect, in conflict with its findings of fact, and is not supported by the evidence, but is contrary thereto, and that same should be reversed, with directions to enter an order requiring defendant, the Pioneer Telephone & Telegraph Company, to make such physical connections with the complainants' switchboard as will adequately and efficiently serve the needs of all concerned, and to further proceed in said matter not inconsistent with this opinion.

All the Justices concur.